THE PEOPLE *ex rel.* AURORA NATIONAL BANK, Trustee, *et al.*, Plaintiffs-Appellees, *v.* THE CITY OF BATAVIA *et al.*, Defendants.—(THOMAS J. HENDRICKSEN *et al.*, Intervenors-Defendants-Appellants.)

Second District   No. 79-711

Opinion filed December 24, 1980.

Matthews, Dean, Echimeier, Simantz & Hem, P. C., of Aurora (Stuart L. Whitt, of counsel), for appellants.

Neri & Hockberg, of St. Charles, for appellees.

Mr. PRESIDING JUSTICE SEIDENFELD delivered the opinion of the court:

The trial court dismissed the appeal of the defendants, intervenors Thomas J. Hendricksen, Anna Marie Hendricksen, May R. Simpson and John P. Simpson (intervenors) from a judgment declaring certain property restrictions invalid. The complaint to declare the invalidity of the restrictions was brought by the Aurora National Bank, as trustee under its trust No. 402, George C. Neri, John Nottolini, the beneficial owners under the trust, and Pizza Hut, Inc., purchaser under a conditional contract. The intervenors first appeal from the dismissal order, alleging that the trial court lacked jurisdiction to enter it, and ask that the prior appeal be considered on its merits, and then contend that the restrictions are valid and enforceable. The City of Batavia was made a defendant to the declaratory judgment action but has not appealed.

■■ Preliminarily, we conclude that the order dismissing the appeal was without authority and was void. The dismissal order was entered on October 24, 1979, on the basis that the defendants had failed to file the record in the reviewing court until 35 days after the expiration of time granted by the trial court, with no motion having been made to extend time in the reviewing court. The order recited that it was entered pursuant to Supreme Court Rules 309, 323(b) and 323(e) (Ill. Rev. Stat. 1977, ch. 110A, pars. 309, 323(b), 323(e)).

■■ The plaintiffs rely on Supreme Court Rule 309 as it existed prior to its amendment effective October 15, 1979, providing as material that an appeal may be dismissed in the trial court "[b]efore a case is docketed in the reviewing court * * * if 35 days have passed after expiration of the original or extended time to file the record in the reviewing court" (and with no motion for extension of time filed in the reviewing court). (Ill. Rev. Stat. 1977, ch. 110A, par. 309.) The amendment of Supreme Court Rule 309, however, became effective prior to the entry of the dismissal order and provides that the trial court may dismiss the appeal when a case

is docketed in the reviewing court only on motion of the appealing party or by stipulation of the parties. (Ill. Rev. Stat. 1979, ch. 110A, par. 309.) Neither circumstance is present here and under the revised rule, delay in filing the record is no longer a ground for dismissal by the trial court. See Ill. Ann. Stat., ch. 110A, par. 309, Supplement to Historical and Practice Notes, at 321 (Smith-Hurd 1980 Supp.).

We have premised this result on our conclusion that, while the notice of appeal was filed on either June 28 or 29, 1979,[1] the fact that revised Supreme Court Rule 309 was in effect prior to the dismissal order is the controlling factor. The plaintiffs have not argued in this court that the change in a procedural rule is not intended to apply to the pending judgment when it is still subject to review. And we find it neither unjust nor unfeasible to apply the revised rule given the particular circumstances.

Before reaching the merits of the original appeal we will briefly state the material facts. Plaintiffs' amended complaint filed on May 19, 1978, recited that on April 18, 1977, plaintiffs entered into an agreement with Pizza Hut, Inc., for the sale of the subject parcel. Accordingly, Pizza Hut applied to the City of Batavia for the appropriate building permit, which the city refused to issue because of an agreement between the Aurora National Bank as trustee and the city entered into in 1968 placing a number of restrictions on the property. In the agreement it was provided that use of the property be restricted to "Hotels and Motels and attendant business purposes including the sale of alcoholic liquors and the serving of meals; also personal service shops." It was further agreed that no other use should be made of the property for a period of 15 years from July 1, 1968, and that the "agreement and covenants shall be binding upon the grantees, successors and assigns of the said Aurora National Bank * * * and shall be a covenant running with the land."

The intervenors filed a petition for leave to intervene on February 6, 1978. They alleged that they were the owners of properties located directly across the street from the subject premises and that if Pizza Hut was granted a building permit they would suffer severe curtailment of the right to quiet enjoyment of their property as well as loss in value and be subject to noise, traffic, litter and other "concomitants" of the operation. The petition was granted on June 9, 1978.

At the hearing evidence was adduced that the property consists of

---

[1] Although the notice of appeal bears the filing stamp "June 28 3:54 P.M. '79" the intervenors argue that the docket sheet indicates that the notice of appeal was filed June 29. They further rely on an affidavit filed by their attorney attesting the fact that the notice of appeal was filed on the 29th. We note also that the plaintiffs did not file a motion to dismiss within the 35 days although they knew that two motions for extension of time had been filed and granted by the trial court albeit without authority. In the view we have taken we do not decide whether the filing of the notice was on the 28th and therefore within the required time or on the 29th and thus one day late.

approximately 500 feet of frontage along Route 31 immediately south of the Lincoln Inn and north of the Moose Lodge in Batavia. Neri was the owner of the Lincoln Inn and purchased the property in question when it was zoned farming under the county's zoning ordinance. Neri and Nottolini requested of the county a zoning classification to allow them to erect a hotel-motel on the premises. The City of Batavia objected to the proposed rezoning. At the time of the hearing Batavia had adopted a downtown business development plan, which sought to avoid expansion of any business along Route 31, particularly car washes, gas stations, fast food restaurants or any use which would increase traffic along the route. It was apparent from the hearing that the city wished to prohibit any business inconsistent with the city's attempt to expand its downtown business district.

However, Batavia expressed the idea that a hotel-motel facility would not interfere with its master plan or central business development plan and that it would not object providing the use of the property was restricted to the hotel-motel and attendant uses. The city and the attorney for the owners entered into an oral agreement for the execution of a restrictive covenant at which time Batavia withdrew its objections to the proposed rezoning. The property was rezoned to County B—4 by an ordinance passed on May 14, 1968. The written document entitled "Restrictions" was later executed by the bank as trustee at the owners' direction. There was testimony that the agreement was intended to be a contingency imposed upon securing the desired rezoning.

Approximately eight months later a petition for annexation to the City of Batavia was filed and the property was subsequently annexed to the city on April 21, 1969, without reference to the agreement and in an unrestricted B-1 classification.

Following the hearings the trial court invalidated the restrictions and held that the plaintiffs and their successors in title were not bound by them. The appeal by the intervenors followed.

The intervenors contend that the agreement is a valid restrictive covenant and argue that the plaintiffs are barred from challenging its validity because they induced the city to enter into the agreement and profited by it. Plaintiffs, however, characterize the "Restrictions" document as an invalid pre-annexation agreement or, alternatively, as an invalid attempt at conditional rezoning.

We initially consider the intervenors' argument that the "Restrictions" are binding and enforceable based on principles of contract and estoppel. This argument raises the question whether the municipality had authority to enter into the contract. The agreement was entered into in 1968, prior to the new constitution and its home rule provisions. Therefore, the city must have derived its authority to act directly from the legislature. (See,

*e.g., Martin v. City of Greenville* (1977), 54 Ill. App. 3d 42, 44.) We can find no specific grant of legislative power to enter into this type of contract, nor have the intervenors directed our attention to such a grant.

Section 2—2—12 of the Illinois Municipal Code permitted Batavia to contract "for corporate purposes"; however, there is nothing in the Code to indicate that a contract to restrict the use of land outside the city's borders furthers a legitimate corporate purpose. The most nearly applicable grant of authority is found in section 11—12—5 of the Illinois Municipal Code (Ill. Rev. Stat. 1967, ch. 24, par. 11—12—5) in conjunction with section 5 of "An Act in relation to County Zoning" (Ill. Rev. Stat. 1967, ch. 34, par. 3158). These provisions give a municipality the right to draw up a comprehensive plan applicable to territory within 1½ miles from its boundaries and to object, if it is the nearest adjacent city, to county rezoning as it affects land outside its boundary, thereby requiring a three-fourths vote of members of the county board to change the county zoning. But the city has no power to zone that territory outside its corporate boundaries and within county zoning. *City of Canton v. County of Fulton* (1973), 11 Ill. App. 3d 171; *Village of Northbrook v. Village of Glenview* (1980), 88 Ill. App. 3d 288.

Although the supreme court did not object to conditional rezoning when effectuated by a restrictive covenant and zoning amendments in *Pioneer Trust & Savings Bank v. County of Cook* (1978), 71 Ill. 2d 510, the restrictive covenant in that case was between the zoning authority and owner of property within that authority. At present, the courts are grappling with the difficult question of the extent to which a municipality ought to be able to affect the zoning of property outside its borders yet near enough that its use impacts upon the community. The law now grants a municipality the authority to draw up comprehensive plans which are advisory in nature (Ill. Rev. Stat. 1979, ch. 24, par. 11—12—5); to object to county rezoning and thus require an extraordinary majority for zoning amendments (Ill. Rev. Stat. 1979, ch. 34, par. 3158); to challenge in court the zoning decisions of other governmental units conditioned "upon a clear demonstration that it would be substantially, directly and adversely affected in its corporate capacity" (*Village of Barrington Hills v. Village of Hoffman Estates* (1980), 81 Ill. 2d 392, 410 N.E.2d 37); and the power to enter into jurisdictional boundary agreements to establish a line beyond which neither municipality will exercise control over unincorporated territories within 1½ miles of the boundaries of two or more corporate authorities that have adopted comprehensive plans (Ill. Rev. Stat. 1979, ch. 24, par. 11—12—9).

But the courts have never permitted a municipality's extra-territorial powers to supersede the governmental unit's exercise of zoning power over land within its own territory. Thus, in *City of Canton v. County of*

*Fulton* (1973), 11 Ill. App. 3d 171, the county zoning authority prevailed over county land, although the zoning was inconsistent with the validly established comprehensive plan of an adjacent city.

In *Goffinet v. County of Christian* (1976), 65 Ill. 2d 40, the supreme court particularly noted that " '[z]oning lies primarily within the province of the municipality, and it is neither the province nor the duty of courts to interfere with the discretion with which the municipal authorities are vested unless the action of the municipal authorities is shown to be unrelated to the public health, safety and morals.' " (*Goffinet*, 65 Ill. 2d 40, 51.) In *Village of Northbrook v. Village of Glenview* (1980), 88 Ill. App. 3d 288, 295, 410 N.E.2d 431), the court expressed grave doubt "that two municipalities could enter into an agreement which gave one municipality the right to limit another municipality's power to exercise zoning control over annexed land even when rezoning was contemplated to occur simultaneously with annexation."

■■ The court has consistently held that the power to zone is distinct from the power to plan for the use of land on the borders of a community. Although the power to zone may be a sufficient grant of power to justify the authority to enter into a restrictive covenant, there is no independent power to enter into restrictive covenants to regulate use of land beyond the city's borders.

■■ Having determined that the city had no authority to enter into the restrictive covenant, we turn to the estoppel argument of the intervenors and hold that the intervenors are not proper parties to assert estoppel. The city was the party induced to withdraw its objection by the restrictive covenant. But the city is no longer asserting the validity of the agreement. These parties asserting estoppel in no way relied on the acts of the plaintiffs to their detriment. *Atwater v. Atwater* (1974), 18 Ill. App. 3d 202, 210.

We next consider plaintiffs' argument that the restrictions are void, in effect, because they are a form of conditional or "contract" rezoning.

Zoning based on agreed conditions has not been favored in Illinois decisions. The Illinois Supreme Court, in dicta, noted that conditional zoning amendments "have frequently been invalidated either because they introduce an element of contract which has no place in the legislative process or because they constitute an abrupt departure from the comprehensive plan contemplated in zoning." (*Treadway v. City of Rockford* (1962), 24 Ill. 2d 488, 496-97.) In *Cederberg v. City of Rockford* (1972), 8 Ill. App. 3d 984, 988, we held that an ordinance adopted only because of limitations contained in a restrictive covenant was void, absent any evidence of consideration by the zoning authority of the proper standards for valid zoning enactments, and held that a restrictive covenant was void which limited the business uses permitted on the land. (See also *Andres v. Village of Flossmoor* (1973), 15 Ill. App. 3d 655, 661-63, and *Ziemer v.*

*County of Peoria* (1975), 33 Ill. App. 3d 612, 615-17.) The Illinois Supreme Court has held that the dicta in *Treadway*, which we have noted, is not to be accepted as meaning that conditional rezoning is invalid *per se* but that the focus must be on the application of the traditional zoning standards. (*Goffinet v..County of Christian* (1976), 65 Ill. 2d 40, 50-51.) The record in this case does not disclose whether the City of Batavia gave any consideration to the traditional zoning factors in its decision to withdraw its objection. In addition, the fact that the restrictions were to expire after 15 years, then permitting unlimited commercial development, is some indication that the conditions were not considered basic to the city's long range plan.

Further, we have substantial doubt whether any issue of conditional rezoning is properly before us. All of the cited decisions involve an attempt by a municipality to define the use of land over which it has clear and absolute zoning authority. While Batavia could be said to have some interest in the adjacent land outside of its territory, that interest was certainly less than the power to rezone. If the city had no power to zone, it has no power to rezone regardless of whether it uses an ordinance or a contract to effect that purpose. We conclude that under the circumstances conditional or contract rezoning is not properly an issue.

■■ The trial court denied that the restrictions could be upheld on the basis of a proper pre-annexation agreement and we agree. There is no evidence that the parties ever agreed that the document was to be considered a pre-annexation agreement. Although Neri testified that the document was executed at approximately the same time as the annexation discussions took place this is not proof that the parties entered into a pre-annexation agreement which would bind either the city or the owners. *Union National Bank v. Village of Glenwood* (1976), 38 Ill. App. 3d 469, upon which plaintiffs rely, is not persuasive. In *Union*, there was no question but that a pre-annexation agreement was entered into; on the same day, the village adopted an annexation ordinance which was incorporated into the pre-annexation agreement by reference. Here the agreement was entered into on July 1, 1968, and the petition for annexation was not filed until February 17, 1969, with the ordinance being passed on April 29, 1969, some eight months later. Moreover, the restrictions provided for a 15-year termination period, but the statute governing pre-annexation agreements provided that for the agreement to be valid and binding it must be for a period of not to exceed 5 years from the date of its execution. (Ill. Rev. Stat. 1967, ch. 24, par. 11—15.1—1.) The fact that it was not limited to the 5-year period then provided by the statute appears to be a further indication that the parties did not consider the agreement as a pre-annexation contract.

We therefore conclude that the agreement entered into by the City of Batavia and the owners of the subject property cannot be upheld under any theory of law presented in the trial court.

The judgment is therefore affirmed.

Affirmed.

WOODWARD and LINDBERG, JJ., concur.