(No. 23192.—▇▇▇▇▇▇▇)

THE COMMERCE COMMISSION *vs.* THE CHICAGO RAILWAYS COMPANY *et al.* Appellees.—(THE UNITED MOTOR COACH COMPANY, Appellant.)

*Opinion filed February 14, 1936—Rehearing denied April 10, 1936.*

Loesch, Scofield, Loesch & Burke, for appellant.

Otto Kerner, Attorney General, Irvin Rooks, Lee A. Freeman, Weymouth Kirkland, James M. Sheean, and Harry P. Weber, for appellees.

Mr. Justice Wilson delivered the opinion of the court:

This is an appeal by the United Motor Coach Company from an order of the superior court of Cook county confirming an order of the Illinois Commerce Commission entered on December 27, 1934, directing the Chicago Surface Lines, and its receivers, to install gas or trolley feeder busses on the Northwest Highway and Higgins Road as extensions and parts of existing street railway facilities of the Chicago Railways Company in the city of Chicago and which constitute a part of the Chicago Surface Lines System, with the same rates of fare and free transfer privileges.

The United Motor Coach Company had, by itself or through its predecessors, operated a suburban bus line for the purpose of carrying passengers and serving certain suburban communities, including Park Ridge, Desplaines, Mt. Prospect, Arlington Heights and Barrington and terminating at or near the city limits of Chicago, or a short distance within the city limits. At the terminal of this bus line passengers from the outlying suburban towns transferred to, and paid an extra fare for, carriage to the various points in the city. The service furnished by the United

Motor Coach Company, or its predecessors, has been in operation since 1922. The city limits were extended so as to take in additional territory which included the Northwest Highway for a distance of about four and one-half miles, and Higgins Road for a distance of approximately three and one-half miles. It is over these highways, from the present terminals of the street car lines, that the Illinois Commerce Commission has ordered service to be extended by the street car companies to the present city limits in order to provide adequate facilities to those residents of the city now residing within the added territory.

The Chicago Railways Company owns a system of street railways located mainly in the north and northwest sections of Chicago in which is included the annexed area. The rest of the city is served by three systems known as the Chicago City Railway Company, Calumet and South Chicago Railway Company and the Southern Street Railway Company, respectively. On November 13, 1913, there was passed by the city council what was commonly known as the "Unification Ordinance." Under this ordinance and by an agreement executed by the different street railway companies, the four railway companies have been since that time operated as a single street railway system known and designated as the "Chicago Surface Lines." On October 10, 1934, the city council passed an ordinance granting permission and authority to the Chicago Railways Company, through its receivers, and the other three companies and their receivers, to establish and operate gas or trolley feeder bus lines on Higgins Road from Milwaukee avenue to Canfield Road, and on the Northwest Highway from Milwaukee avenue to Ozanam avenue, the present westerly limits of the city, which were to be extensions of and auxiliary to the present street railway system in Chicago. The charter of the Chicago Railways Company authorized it to operate a system of street railway lines with animal, cable, electric or other power authorized by law.

The proceeding before the commission was initiated by a citation order issued by it against the Chicago Railways Company, and its receivers, and the United Motor Coach Company to show cause why the former should not be directed to install gas or trolley feeder busses on the Northwest Highway and Higgins Road to the city limits as extensions and parts of the existing street railway facilities of that company in Chicago and as a part of the Chicago Surface Lines system with the same rates of fare and free transfer privileges. Extensive hearings were had before the commission and numerous exhibits were introduced in evidence. The record indicates that the citation order was prompted by the fact that complaints had been filed with the commission concerning the inadequate transportation service for the territory contiguous to Higgins Road and the Northwest Highway west of Milwaukee avenue in the city of Chicago, and that the residents of the city in that area were not receiving the benefits of the comprehensive intra-city transportation service but were required to use the motor coach service in order to connect with the city railway service. It appears that they were compelled to pay two fares, one to the United Motor Coach Company, and the other to the Chicago Surface Lines, and thus were deprived of the right of the free transfer privileges available in other parts of Chicago.

The answer of the United Motor Coach Company averred its possession of certificates of convenience and necessity to operate its various routes, including those on Higgins Road and the Northwest Highway, and denied the legal authority of the commission to order an extension of the street railway lines by means of gas or trolley feeder bus lines on these two thoroughfares. The answer also claimed that it was rendering adequate service in the city of Chicago and that the proposed extension of the street car lines by means of bus or trolley service would deprive it of a substantial part of its revenue, thereby taking its

property without due process of law and denying it the equal protection of the laws in contravention of the State and Federal constitutions.

The order of the commission finds that the United Motor Coach Company was established to render a suburban bus service to villages surrounding the city of Chicago, and that as a means of completing its routes it had been granted the right to run its lines into the city on the Northwest Highway and Higgins Road, and that its city service is restricted to the small area extending from the present city limits to the terminals of the Chicago Railways Company; that the Coach company neither has the financial ability nor legal authority to enable it to supplement its lines and routes so as to provide even a small part of the local transportation needs of the residents living adjacent to its present operations on Higgins Road and the Northwest Highway; that the Chicago Railways Company has operated in part of this territory for many years; that the unified street car system, of which the company is a component part, has made available to residents of the city at a single rate of fare over one thousand miles of track which cover the entire area of Chicago; that the service rendered by the Coach company is essentially a suburban bus service and is inadequate to meet the needs of local transportation within the limits of the municipality; that its total operating length is sixty-seven miles including the three and one-half miles on Higgins Road and four and one-half miles on the Northwest Highway which are now within the present limits of the city; that within the area covered by the proposed extension of service by the surface lines there is a population of approximately 18,300 residents who are not at present served with adequate local transportation facilities; that the territory in question is almost entirely a residential district; that there are a great number of school children who are attending various high schools and technical schools in the city who are compelled

to pay extra fares by reason of the use of the two different transportation agencies in question; that. the passengers using the United Motor Coach Company are not deposited at their ultimate destinations in the city but are brought to the terminals of the Chicago Railways Company and are there deposited and required to pay an additional fare for further transportation within the limits of the city of Chicago; that the Coach company is merely a feeder to the railway system in Chicago and does not answer any municipal purpose; that the service at present rendered by the Coach company within the city limits is only incidental to its main use or purpose, namely, that of supplying a suburban bus transportation service; that the United Motor Coach Company now employs five busses for its Higgins Road operation within the city of Chicago and eight busses on the Northwest Highway, and that the value of these busses has already been paid for by the riding public in the form of depreciation allowances charged to operating expenses; that the street railway companies and their receivers should be directed to forthwith apply to the Department of Public Works and Buildings of the State of Illinois for permission and consent to operate gas or trolley feeder busses in the city of Chicago, as extensions to the existing street railway facilities, and that upon compliance with the commission's order a certificate of convenience and necessity should be issued by the Illinois Commerce Commission to the four street railway companies previously named for the installation and operation of the extensions and the requisite additional facilities.

The condition in regard to the area involved in this proceeding was brought to the attention of the Illinois Commerce Commission on complaint of certain residents of the city living in that district. Upon its own motion the Illinois Commerce Commission issued the citation order directed against the Chicago Railways Company and the United Motor Coach Company. The citation order

directed the Chicago Railways Company to show cause why it should not extend its established and existing local transportation system. This proceeding conforms with section 50 of the Public Utilities act (Ill. State Bar Stat. 1935, p. 2500; Smith's Stat. 1935, p. 2544;) which provides that the commission may, after a hearing upon its own motion, or upon complaint, find that additions, extensions, repairs or improvements to, or changes in, the existing plant, equipment, apparatus, or facilities of any public utility ought reasonably to be made to promote the convenience of the public, and enter an order directing such improvements to be made. No informality in the proceeding shall invalidate any order, rule or regulation of the commission merely because of any such informality. *Palmyra Telephone Co.* v. *Modesto Telephone Co.* 336 Ill. 158.

It is insisted that the Chicago Railways Company was not authorized under its charter to operate a feeder bus line and that any attempt on its part to operate such a line would be *ultra vires.* This question is not raised by the Chicago Railways Company but by the United Motor Coach Company. The latter company has not the right to raise the question in this proceeding. *Chicago General Railway Co.* v. *Chicago City Railway Co.* 186 Ill. 219.

The contention is made that the findings of the Commerce Commission are insufficient to sustain its order. The Public Utilities act requires the commission to make and render findings concerning the subject matter inquired into and to enter its order based upon such facts. These findings should be sufficiently specific to enable the court to review intelligently the decision of the commission and to ascertain whether the facts as found afford a reasonable basis for the order entered. In reviewing an order of the commission, the court is limited to the consideration of the questions whether the commission acted within the scope of its authority and whether the findings support its decision. (*City of Chicago* v. *Commerce Com.* 356 Ill. 501.)

The act itself, however, does not authorize this court to put itself in the place of the commission in order to determine, independently, the issues presented, and to substitute its judgment for that of the commission. (*City of Chicago* v. *Commerce Com. supra; Chicago North Shore and Milwaukee Railroad Co.* v. *Commerce Com.* 354 Ill. 58.) The findings of the commission in the proceeding here, although voluminous, are specific and fully meet the requirements of the statute.

The principal question involved in this proceeding is whether the order of the Commerce Commission directing the extension of the lines of the Chicago Railways Company by means of motor bus service to the city limits deprives the United Motor Coach Company of its property contrary to the constitutional guaranties invoked. This company has no vested rights in the highways or streets and has no financial investment over any right of way in the designated territory. Its rights, if any, are such as it may have acquired by reason of the service which it performed. Before the enactment of the Public Utilities act such highways and streets were open to competition by any company which sought to carry passengers, provided it had the proper highway consent. The purpose of the Utilities act was to control this competition so that such service would not be destroyed because of ruinous competition but would be protected under proper regulation. This regulation, however, is not for the benefit of the carrier alone but is as well for the benefit and convenience of the public in general. The convenience and need of the public are of primary importance and was so contemplated by the legislature in the enactment of the Public Utilities act. (*City of Chicago* v. *Alton Railroad Co.* 355 Ill. 65; *Palmyra Telephone Co.* v. *Modesto Telephone Co. supra; Wabash, Chester and Western Railway Co.* v. *Commerce Com.* 309 Ill. 412.) The act contemplates actual supervision of every public utility, so that continuous, adequate, uniform and sat-

isfactory service shall be rendered to the public at reasonable rates and without discrimination. *City of Chicago* v. *Alton Railroad Co. supra.*

The argument that the United Motor Coach Company has built up the district extending from the old terminal of the Chicago Railways Company along Higgins Road and the Northwest Highway to the present city limits is not altogether correct. This district was also increased in population by reason of the fact that the Chicago Railways terminal was in, or near, or accessible to this district. A great deal of the success or prosperity, if any, of the United Motor Coach Company in its operations was owing to the fact that the Chicago Railways Company gave the passengers of the United Motor Coach Company, by receiving them at its terminal, access to all parts of the city of Chicago. Without this connection the service rendered by the United Motor Coach Company would, to a great extent, have been considerably less. In our opinion there is nothing to prevent the United Motor Coach Company from continuing its suburban service or even extending it from the new terminal of the Chicago Railways Company as designated by the order of the Illinois Commerce Commission, provided it conforms to the necessary requirements. There can be no doubt but what a continuous service to the new city limits from the old terminal of the Chicago Railways Company will benefit the public within that area by reason of the continuous service and the single fare. It will also be a convenience to other residents of the city desiring transportation into the newly created city area. This continuous service will also avoid the inconvenience and delay of transferring from one line to the other under all kinds of weather conditions. This is particularly true as to the children attending high school and technical schools in the former Chicago district. The order deprives the United Motor Coach Company of approximately three and one-half to four miles' length of its service over each of the two

highways but grants to the public a uniform system of transportation over a thousand miles, more or less, of city service. In our opinion there is no reason, as the Illinois Commerce Commission finds, for depriving the residents in the area in question of the rights accorded to the other residents of Chicago.

It becomes unnecessary to consider any of the other questions presented for the reasons stated in the opinion.

The order of the superior court is affirmed.

*Order affirmed.*