LAWRENCE K. JOSEPH, a/k/a Larry Joseph, *et al.*, Plaintiffs-Appellants, *v.* LAKE MICHIGAN MORTGAGE COMPANY *et al.*, Defendants-Appellees.

First District (1st Division)    No. 81-0137

Opinion filed May 24, 1982.—Rehearing denied June 22, 1982.

Robert Marks, of Marks, Marks and Kaplan, of Chicago, for appellants.

James B. Rosenbloom, of Goldberg, Kohn, P. C., of Chicago, for appellee State Mutual Life Assurance Company of America.

Hinshaw, Culbertson, Moelmann, Hoban & Fuller, of Chicago (Douglas M. Reimer, Michael J. Leech, and Stephen R. Swofford, of counsel), for appellee Lake Michigan Mortgage Company.

JUSTICE O'CONNOR delivered the opinion of the court:

Plaintiffs, Lawrence K. Joseph, a/k/a Larry Joseph, and Leonard Miller, commercial real estate developers, brought this action against defendants seeking the return of a good faith deposit from State Mutual Life Assurance Company of America (State Mutual) and a brokerage fee from Lake Michigan Mortgage Company (Lake Michigan). Defendants State Mutual and Lake Michigan filed motions to dismiss plaintiffs' amended complaint, which were granted. Plaintiffs appeal, contending that their amended complaint was sufficient to state a cause of action. We affirm.

A motion to dismiss admits as true all well-pleaded facts and attacks only the legal sufficiency of the complaint. (Ill. Rev. Stat. 1979, ch. 110, par. 45; *Johnson v. Nationwide Business Forms, Inc.* (1976), 41 Ill. App. 3d 128, 359 N.E.2d 171.) It admits neither legal conclusions nor conclusions of fact unsupported by allegations of specific facts upon which conclusions rest. (*People ex rel. Scott v. Carriage Way West, Inc.* (1980), 88 Ill. App. 3d 297, 410 N.E.2d 384, and cases cited therein.) Every intendment and fair inference is in favor of the pleadings and if under any aspect of the facts stated the plaintiffs could recover, the motion should be denied. *Great Atlantic & Pacific Tea Co. v. LaSalle National Bank* (1979), 77 Ill. App. 3d 478, 395 N.E.2d 1193.

During June 1976 plaintiffs made a written application for a long term end loan to Lake Michigan. A deposit of $10,000 was paid to Lake Michigan as an advancement on the fee it would earn if an end loan commitment was found and accepted. On October 26, 1976, plaintiffs accepted a commitment from State Mutual and made a good faith deposit of $45,000 to it on the commitment. Plaintiffs then paid the remaining $12,500 in fees due to Lake Michigan. Plaintiffs commenced negotiating an interim construction loan with a bank. This loan would be repaid with the proceeds of the end loan from State Mutual. In order to finalize the interim construction loan both plaintiffs and their prospective interim lender sought assurances from State Mutual that the initial disbursement from the end loan would be made unconditionally upon 100% completion of the buildings. State Mutual would confirm only that the initial disbursement would be made at the time of 100% completion if there was no breach of any existing leases. Plaintiffs allegedly could not secure the

interim loan under these circumstances. They went elsewhere for an end loan commitment and instituted this action.

Plaintiffs' amended complaint contains five counts. Counts I, II and V are directed towards State Mutual for the return of the good faith deposit of $45,000, while all five counts relate to Lake Michigan's fee of $22,500. Count I sought relief for anticipatory breach of the commitment by State Mutual. Counts II and IV allege impossibility of performance, seeking relief based on grounds that the deposits retained by defendants constitute unjust enrichment, forfeiture or penalty. The basis for relief in count III is a breach of contract theory, alleging Lake Michigan did not obtain for plaintiffs the end loan contemplated by the loan application. Count V alleges, in a number of paragraphs, that there was no meeting of the minds and that mistake, unilateral or mutual, occurred.

The central allegation of each count revolves around the meaning of paragraph 8 of the end loan commitment with State Mutual. Paragraph 8 of the end loan commitment attached to the amended complaint provides in pertinent part:

"8. *Disbursement of Loan.* The Loan will be disbursed upon compliance by Borrower with the terms and provisions of this Commitment and with the following specific requirements:

(a) *General Conditions.* The Loan will be disbursed in two or three stages and, at each stage, the Borrower must satisfy the following general conditions:

\* \* \*

(iv) there are no material defaults by any of the tenants and no uncorrected defaults by the lessor under any of the leases;

\* \* \*

(b) *Initial Disbursement.* $1,820,000 will be disbursed if, prior to June 1, 1978, construction of the Improvements, in a good and workmanlike manner and in accordance with the Plans and Specifications, and including full finish to all tenant suites, is 100% complete and ready for occupancy and Borrower has satisfied all the general conditions listed above. \* \* \*."

Plaintiffs allege that the initial disbursement was to be made, unconditionally, no later than "the time the buildings were 100 per cent completed." Plaintiffs also allege the parties intended and understood the commitment would provide for such an initial disbursement. Defendants, on the other hand, assert that the initial disbursement is also subject to the conditions found in paragraph 8(a). Thus, they assert the initial disbursement would properly be made after the buildings were 100% completed and there were no defaults by any tenants. In fact, defendants argue that these requirements apply to each disbursement made under the commitment.

■■■ A contract is to be construed as a whole, giving meaning and effect to every provision thereof, if possible, since it is presumed that every clause in the contract was inserted deliberately and for a purpose. (*Martindell v. Lake Shore National Bank* (1958), 15 Ill. 2d 272, 154 N.E.2d 683.) It is well established that the primary objective in construing a contract is to give effect to the intention of the parties involved. (*Schek v. Chicago Transit Authority* (1969), 42 Ill. 2d 362, 247 N.E.2d 886; *Spircoff v. Spircoff* (1979), 74 Ill. App. 3d 119, 392 N.E.2d 363.) The intention of the parties must be ascertained from the language employed in the instrument itself and where there is no ambiguity, from such language alone. *Sharps v. Stein* (1980), 90 Ill. App. 3d 435, 413 N.E.2d 75; *Gardiakos v. Vanguard Communications, Inc.* (1976), 38 Ill. App. 3d 937, 350 N.E.2d 210.

■■ The existence of an ambiguity is a question of law for the court. (See *Hagerty, Lockenvitz, Ginzkey & Associates v. Ginzkey* (1980), 85 Ill. App. 3d 640, 406 N.E.2d 1145; *Gardiakos.*) An ambiguous contract is one capable of being understood in more than one sense (*State Security Insurance Co. v. Linton* (1978), 67 Ill. App. 3d 480, 384 N.E.2d 718); an agreement is obscure in meaning through indefiniteness of expression or having double meaning (*First National Bank v. Victor Comptometer Corp.* (1970), 123 Ill. App. 2d 335, 260 N.E.2d 99). We find no such ambiguity exists. A review of the commitment in its entirety, and of paragraph 8 in particular, fails to reveal any provision which is fairly susceptible to more than one interpretation concerning the conditions upon which the initial disbursement is to be made. The whole of paragraph 8 clearly and unambiguously sets forth the requirements needed for the disbursement of the end loan. Section (a) of paragraph 8 sets forth five such general conditions, one of these being "no material defaults by any of the tenants." Paragraph 8(b), specifically referring to the initial disbursement, unequivocally makes these general conditions a requirement for disbursal. Consequently, State Mutual properly under the contract refused to acknowledge plaintiffs' interpretation of the commitment.

■■ Plaintiffs contend that if defendants' construction of the agreement is reasonable, then the agreement is ambiguous. Thus, they conclude, the intention of the parties must be garnered from extrinsic evidence of the circumstances surrounding the making of the agreement. (*Decatur Lumber & Manufacturing Co. v. Crail* (1932), 350 Ill. 319, 183 N.E. 228.) Although this is true of ambiguous language, a contract is not rendered ambiguous simply because the parties do not agree on its meaning. *Harris v. American General Finance Corp.* (1977), 54 Ill. App. 3d 835, 368 N.E.2d 1099; *Spircoff; Hagerty, Lockenvitz, Ginzkey & Associates.*

As was stated in *Saddler v. National Bank of Bloomington* (1949), 403 Ill. 218, 228-29, 85 N.E.2d 733, 740:

"What the parties to a written contract may have understood as to the meaning of the language used is not admissible in evidence. The intention or understanding of the parties, when there is a written contract in evidence, must be determined not from what the parties thought but from the language of the contract itself. [Citation.]

An agreement, when reduced to writing, must be presumed to speak the intentions of the parties who signed it. It speaks for itself, and the intention with which it was executed must be determined from the language used to express its intention. It is not to be changed by extrinsic evidence, as to how it was understood or what was intended. [Citations.]"

■■ Plaintiffs additionally argue, in the alternative, that there was no meeting of the minds on the loan application to Lake Michigan, that unilateral mistake occurred and the commitment is impossible to perform if defendants' construction of the terms is upheld. A subjective understanding of the parties, such as has been alleged by plaintiffs, does not show a lack of mutuality; it suffices that the conduct of the contracting parties indicates an agreement to the terms of the contract. (*Steinberg v. Chicago Medical School* (1977), 69 Ill. 2d 320, 371 N.E.2d 634.) The loan application, which is attached to the complaint, contains plaintiffs' signatures and reveals that many changes in the wording were made. Such overt acts lead to a determination that mutual assent of the parties existed. *Steinberg*; see 1 Williston, Contracts sec. 22 (3d ed. 1957).

■■ Plaintiffs' theories of mistake are also inadequate to establish a cause of action. The mistake here is not one of fact, but one of law. A party may not avoid a contract fairly entered into because of a mistaken opinion of its legal effect. *McCarthy v. McCarthy* (1956), 9 Ill. App. 2d 462, 133 N.E.2d 763; *In re Estate of McIlrath* (1934), 276 Ill. App. 408; *Holbrook v. Tomlinson* (1922), 304 Ill. 579, 136 N.E. 745.

Our construction of the commitment does not make it impossible to perform as plaintiffs suggest. The general conditions to the initial disbursement cannot be considered unduly restrictive to the securing of a construction loan. We note that in the loan application Lake Michigan agreed to provide a construction loan if requested to do so by plaintiffs.

■■ We are not persuaded by plaintiffs' contention that the amounts paid to defendants constitute a penalty or forfeiture. Lake Michigan earned its fee under the loan application when it obtained a commitment which was accepted by plaintiffs. The commitment was not improper in requiring a good faith deposit to be paid to State Mutual. It provides that if the loan was not timely closed the deposit will be kept by State Mutual as compensation for services rendered and the issuance of the commitment. Thus, the deposit amounted to an agreed fee in the event the commitment

was not finalized and is not to be regarded as a penalty. See *Hamming v. Murphy* (1980), 83 Ill. App. 3d 1130, 404 N.E.2d 1026, *appeal denied* (1980), 81 Ill. 2d 592; *Steel v. Peoples Oil & Gas Co.* (1909), 147 Ill. App. 133.

For the reasons stated, the order of the circuit court of Cook County dismissing the amended complaint is affirmed.

Affirmed.

GOLDBERG and McGLOON, JJ., concur.